UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| AUBREE EBERSOLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:11-cv-25 SNLJ |
| | ) | |
| NOVO NORDISK, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff filed this lawsuit against her former employer Novo Nordisk, Inc. ("Novo") and supervisor Murty Sitarama alleging violations of the Family and Medical Leave Act ("FMLA") and Americans with Disabilities Act ("ADA"). Count I is for violations of the FMLA against both Novo and Sitarama, and Counts II and III are for violations of the ADA against Novo. Defendants have filed for summary judgment. The matter has been fully briefed and is now ripe for disposition. Also pending before the Court are defendants' Motion to Exclude the Expert Report and Testimony of Dr. Allen Self (#42) and Motion to Strike the Untimely Fourth Report of Dr. Allen Self (#56).

**I.    Background**

The parties, for the most part, agree on the pertinent facts. Plaintiff worked as a sales representative for Novo, which is a pharmaceutical company that manufacturers and distributes medications that treat diabetes patients. Sales representatives are assigned geographic territories within which they make "sales calls" to promote Novo products. A sales call is defined as a face-to-face meeting with a health care provider during which the sales representative presents one or more product attributes and requests that the health care provider prescribe a product.

Novo has express policies and procedures for recording the "sales calls" which its sales representatives make to health care providers. The specific requirements are necessary both for regulatory purposes and to ensure accountability for sales representatives, who generally work without supervision. Novo maintains that it has a "zero tolerance policy" for call falsification, and if Novo determines that a sales representative reports a call that does not satisfy the "call" definition, the sales representative may be terminated. (On the other hand, plaintiff disputes that Novo truly has a "zero tolerance policy," and plaintiff further points out that the supposed policy is not written anywhere.)

Plaintiff was diagnosed with rheumatoid arthritis ("RA") when she was a child, and she requires treatment with medication to keep her symptoms under control. She began working for Novo in 2007. Her territory was southern, mostly-rural Missouri with two other sales representatives — Jake Martin and Lance LaFont. In late 2008, she requested and was permitted to take FMLA leave for six weeks, from January 21 to March 5, 2009, to receive treatment for her RA. When she left work in January, her supervisor was Joseph Reichard, but when she returned, Reichard had been terminated; defendant Murty Sitarama became her supervisor in April 2009. Plaintiff returned to work with no restrictions and never requested medical leave again.

Plaintiff met defendant Sitarama in April 2009. On their first "ride-along," plaintiff says that Sitarama made plaintiff's health condition the focus of their conversation. He told her he was aware of her medical condition and her medical leave and asked about her medications. Plaintiff says Sitarama said that his boss, the regional manager, wanted to know whether it was the "sick rep" (plaintiff) or the "other rep" (plaintiff's co-sales-representative) who was more effective. Plaintiff also says that, in July, Sitarama told her she should not take any vacation

2

leave that year, and that plaintiff found his instruction to be intimidating. On the other hand, plaintiff subsequently requested three days of vacation time in August, and Sitarama approved the request.

Meanwhile, sometime in April 2009, Sitarama found out that sales representative Jake Martin may have falsified a call by recording a visit to a Dr. Boda in Houston, Missouri on April 2, 2009. Dr. Boda had in fact relocated to a new practice in Joplin, Missouri. Sitarama launched an investigation and determined that Martin had falsified a call to Dr. Boda by recording a call on Dr. Boda after he had moved his practice to Joplin. In investigating sales calls made to Dr. Boda, Sitarama also determined that, in September and October 2008, plaintiff had recorded three calls on Dr. Boda in Houston after he no longer practiced there.

Plaintiff admits that she recorded calls on Dr. Boda without actually meeting Dr. Boda face-to-face. She explains that her former supervisor, Joseph Reichard, told her she should record the calls. In his deposition, Reichard explained that he "may have" told her to do that because if she traveled a long distance to see a doctor, and the doctor did not show up, but she spoke with staff instead, he may have said to log it. Reichard, however, readily acknowledged that it would have been violation of company policy to do so. Plaintiff recorded three such calls with Dr. Boda because she says she spoke with his nurse practitioner. Then, plaintiff's partner, Lance LaFont, told plaintiff not to record the calls until she got the nurse practitioner added to Novo's list of approved providers. At that point, plaintiff continued to meet with the nurse practitioner, but she stopped recording the calls.

Novo terminated both plaintiff and Martin's employment on August 11, 2009 for call falsification. That same year, Novo similarly terminated six other representatives in plaintiff's region for falsifying call reports, and dozens more sales representatives across the country were

3

terminated for falsely recording calls. Plaintiff claims that Novo actually terminated her because she took FMLA leave and because of her medical condition.

**II.     Legal Standard**

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). Notably, the Eighth Circuit has recently articulated that "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc). With these principles in mind, the Court turns to the discussion.

**III. Discussion**

Plaintiff claims that (Count I) defendants violated the FMLA by harassing and terminating her for taking medical leave, (Count II) Novo violated the ADA by harassing and terminating her for her disability, and (Counts II and III) Novo violated the ADA by refusing to accommodate plaintiff's disability. Defendants contend that plaintiff's claims are unsupported and that they are entitled to summary judgment on all three Counts.

**A. Count I: FMLA Retaliation Claim**

Plaintiff has brought an FMLA retaliation claim against defendants, as she "alleges that the employer discriminated against [her] for exercising [her] FMLA rights." *Chappell v. The Bilco Co.*, 675 F.3d 1110, 1115 (8th Cir. 2012).

**1. Direct Evidence of Discrimination**

First, plaintiff contends that she has submitted direct evidence of discrimination in that (1) Sitarama and his supervisor, Chris Connell, asked about her medical issues, (2) she has shown that Sitarama warned plaintiff not to take any additional leave. A remark by a decisionmaker is direct evidence of discrimination only if it shows "a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action." *Torgerson*, 643 F.3d at 1045-46. "Such evidence must be 'strong' and must 'clearly point[] to the presence of an illegal motive' for the adverse action." *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 953 (8th Cir. 2012) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)).

Defendants assert that, with respect to Sitarama and Connell's questions about her medical issues, their comments do not rise to the level of "direct evidence" of discrimination because they evince nothing more than curiosity about an employee's absence. The Court agrees.

5

Reichard testified that his conversations with Connell were limited, and they did not reflect anything aside from natural human curiosity. Sitarama's ride-along conversation with plaintiff — particularly in the context of two pharmaceutical representatives on a long drive in the country — is the same. In or out of context, Sitarama and Connell's questions about the nature of plaintiff's medical diagnosis and treatment do not point to the presence of an illegal motive. Their comments and questions were facially neutral.

As for Sitarama's July 2009 warning that plaintiff should not take any additional leave, defendants maintain that his statement (which they concede for purposes of summary judgment only) did not relate to medical leave or disability at all, but that it related to vacation time. Indeed, the comment is facially neutral. Although it merits discussion in the context of indirect evidence, the Court agrees that the warning does not meet the Eighth Circuit's definition of direct evidence.

### 2. Indirect Evidence of Discrimination

There being no direct evidence of discrimination, the Court turns to analyzing her retaliation claim under the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a prima facie case by showing that (1) she exercised rights afforded by the Act, (2) she suffered an adverse employment action, (3) there was a causal connection between her exercise of rights and the adverse employment action. *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008); *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). Second, if plaintiff meets that burden, then the burden shifts to the defendants "to come forward with evidence of a legitimate, nondiscriminatory reason for the adverse action." *Phillips*, 547 F.3d at 912. Defendants' burden "is not onerous, and the showing need not be made by a preponderance of the evidence. *Id.*

6

(quoting *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 860 (8th Cir. 2005)). Third, if defendants meet that burden, then plaintiff must set forth evidence "that creates an issue of fact as to whether the asserted reason was pretext for discrimination." *Phillips*, 547 F.3d at 912 (citing *Smith*, 302 F.3d at 833).

As to the first step, defendants argue that plaintiff cannot set forth a prima facie case of discrimination because there is no causal connection between her exercise of FMLA rights and her termination. The Eighth Circuit looks to the date the employer knew the employee planned to use FMLA leave, which in this case is January 2009. *See Sisk v. Picture People, Inc.* 669 F.3d 896, 900 (8th Cir. 2012). Here, seven months passed before plaintiff was terminated. If plaintiff relied on a temporal connection alone to show causality, her claim would fail, as, "in order for temporal proximity alone to be sufficient, 'the temporal proximity must be very close.'" *Id.* (quoting *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006)). The Eighth Circuit has held, for example, that periods as short as one month were too long to support causation. *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1088 (8th Cir. 2010) (one month); *Wisbey v. City of Lincoln,* 612 F.3d 667, 676 (8th Cir. 2010) (one month); *see also Sisk*, 669 F.3d at 901 (two months).

Defendants argue plaintiff has not identified any "stray marks or actions that single out Ebersole for different treatment than her peers or otherwise suggest some connection between her leave and subsequent discharge." (#44 at 5-6). This Court disagrees. As discussed above, Sitarama's comments identifying plaintiff as the "sick" representative and suggesting she should not take any more leave that year do support plaintiff's prima facie case. As a result, the burden shifts to defendants to supply a non-discriminatory reason for plaintiff's termination.

7

Defendants' non-discriminatory reason is that plaintiff violated Novo's company policy. Plaintiff admits that she violated Novo's rules regarding proper reporting of sales calls on health care providers. She argues that Novo's reason for terminating her are pretext, however, because (1) the falsified calls happened 10 to 11 months before her termination, (2) Novo's "zero tolerance policy" is not codified anywhere, (3) other employees suspected of falsifying calls were not investigated, (4) plaintiff was told to falsify the calls by her supervisor, (5) plaintiff was at a health care provider's office for the calls she falsified, and (6) her former supervisor believes he was fired for taking medical leave. Plaintiff maintains that such evidence establishes a question of fact for the jury as to whether defendants' alleged non-discriminatory reason was pretext.

The Court disagrees. An employee may prove pretext by demonstrating that (1) the employer's proffered reason has no basis in fact, (2) the employee received a favorable review shortly before he was terminated, (3) similarly situated employees who did not engage in the protected activity were treated more leniently, (4) the employer changed its explanation for why it fired the employee, or (5) the employer deviated from its policies. *Phillips*, 547 F.3d at 913 (citing *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006)). Not all of plaintiff's "evidence" goes to support any of those methods of proving pretext, but the Court will discuss each in turn.

First, with respect to the timing of the falsified calls, the undisputed facts make clear that defendants undertook a thorough investigation upon learning that Dr. Boda had moved his practice. There is careful documentation of the investigation as it progressed through the spring and summer of 2009. Then, Novo terminated both plaintiff and her coworker (who made falsified calls to the same doctor) on the same day. Plaintiff's complaint about Novo's failure to codify its "zero tolerance policy" likewise has no weight here: Novo's policies clearly and

indisputably state that termination may result if calls are falsified, and Novo terminated six representatives in plaintiff's district and dozens of representatives nationally for that reason in 2009.

Next plaintiff suggests that she was unfairly targeted — and that Novo did not apply its policy fairly — because other sales representatives in her district who were suspected of call falsification were not investigated. In support, plaintiff points to evidence that her former supervisor, Joe Reichard, had been investigating two sales representatives whom he suspected of falsifying calls. Reichard, more than a month after he was terminated by Novo, emailed a Novo human resources manager an Excel spreadsheet containing call records, but with no explanation and no indication of whose call records they were. Reichard admits that he bore a grudge against the two sales representative he was "investigating," and he admits that he sent the information to human resources seeking a larger severance. Further, Novo had no reason to believe that the two representatives in question should be investigated. Ultimately, these two representatives do not constitute similarly situated employees who are suitable for comparison. "The individuals used as comparators must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003) (internal quotes omitted) (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)). The sales representatives in question here had different supervisors, and, more importantly, Reichard never disclosed his concerns to Sitarama. They are poor comparators because human resources, not Sitarama, made the decision not to further Reichard's alleged investigation. In contrast, Ebersole may be compared to her non-disabled coworker, Jake Martin, both of whom had the same supervisor, were subject to the same standards, and engaged in the same conduct. Indeed, Ebersole falsified

9

three calls — Martin falsified one — but both were terminated. Notably, plaintiff failed to distinguish or even mention Jake Martin's similar termination, or any of the dozens of falsified-call-based terminations in her district and around the country.

Further, plaintiff argues that her violation of Novo's call policy should be excused because Reichard told her she could record the calls, and because she actually did meet with a healthcare provider (a nurse practitioner). Setting aside the question of whether Reichard actually did tell plaintiff to record the calls, plaintiff's motives behind recording the calls are irrelevant. No one disputes that Novo's policy against such call falsification is clear. Novo has serious regulatory and business reasons for requiring accurate business records, and the company's written policy specifically provides that "immediate termination" may result in cases of "dishonesty and/or misstatement or falsification...of company business records." Even Reichard, who testified that he may have told plaintiff to record the calls to Dr. Boda, admitted that such conduct would "absolutely" be a violation of Novo's policy.

Finally, plaintiff argues that she has presented proof of Novo's "pattern and practice of discrimination" in that her former supervisor Joe Reichard says he was terminated because he took FMLA leave. Plaintiff's reliance on "pattern and practice" evidence is misplaced here, as such proof is not employed in cases brought by individuals. *See Craik v. Minnesota State University Bd.*, 731 F.2d 465, 469 (8th Cir.1984) ("How the prima facie case is established and the consequences of its establishment, however, depend on whether the case is (1) brought by a single plaintiff on his or her own account or (2) a class action alleging a pattern or practice of discrimination."). *See also Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 552 F. Supp. 2d 867, 916 (D. Minn. 2008), *aff'd in part*, *rev'd in part*, 578 F.3d 787 (8th Cir. 2009); *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004).

In sum, plaintiff has not raised an issue of fact sufficient to show that Novo's non-discriminatory reason for terminating her employment was pretext. Instead, plaintiff admits that she violated company policy; she cannot dispute that her coworker was fired on the same day for the same reason; and she has not shown that Novo deviated from its policies in any regard. Rather, it appears that Novo systematically investigated and terminated employees who were found to have falsified calls, and plaintiff's termination had nothing to do with FMLA leave that she took seven months before. Summary judgment will thus be granted to defendants on this Count.

B. **Counts II and III: ADA Harassment, Termination, Failure to Accommodate**

Plaintiff's Counts II and III claim that Novo harassed, terminated, and failed to accommodate plaintiff because of her physical disability. "To establish a *prima facie* case of discrimination under the ADA, an employee must show that she (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment decision because of the disability." *Kallail v. Alliant Energy Corporate Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012) (citing *Huber v. Wal–Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007)).

Plaintiff argues that defendants inquired into her disability on multiple occasions and warned her not to take any more leave. She says that the warning that she should not take more leave was a "direct refusal to provide the one accommodation that was needed and a reprisal for taking the allowed leave." (#51 at 15.) Plaintiff states that Novo's "alleged reason for termination doesn't add up" and surmises that Novo "went hunting" for a reason to terminate her after concluding that "her disability was more than it wanted to deal with." (*Id.*)

11

Plaintiff's only alleged adverse employment decision is the decision to terminate her. Defendant has supplied a non-discriminatory reason for her termination, which was discussed at length with respect to plaintiff's FMLA claim, and the same *McDonnell Douglas* burden shifting analysis applies here as well. *See Norman v. Union Pacific R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010). Nothing suggests that Novo manufactured its non-discriminatory reason for terminating plaintiff.

Next, plaintiff's complaint that she was warned not to take leave does not suffice to create an issue of fact here, as the alleged comment regarding plaintiff's leave was specific to vacation time — it had nothing to do with refusal to accommodate plaintiff's disability. Plaintiff's RA does not appear to have affected her work at all; instead, the only time plaintiff requested an accommodation — six weeks of FMLA leave to treat her RA — the accommodation was made. Plaintiff returned to work with no restrictions. Although plaintiff states that Novo did not want to "deal with" her condition, plaintiff is bereft of facts to support that statement: her only example is that Novo granted her six weeks of FMLA leave seven months before she was terminated. Plaintiff's ADA claims related to her termination and accommodation therefore fail on summary judgment.

Although plaintiff's brief focuses almost entirely on her "wrongful discharge," to the extent plaintiff brings a hostile work environment claim, plaintiff must show that she is a "member of the class of people protected by the statute, that [s]he was subject to unwelcome harassment, that the harassment resulted from [her] membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of [her] employment." *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012) (citing *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003)). Plaintiff's apparent harassment

claim stems from defendant Sitarama's questions and statements about her medical leave and RA symptoms and treatment. Plaintiff testified that Sitarama stated

> Aubree, I know you've been on medical leave. I know you have a medical condition. You know, Chris Connell is aware of this and he wants to know -- Chris Connell wants to know who is the effective rep in this territory. Is it you, Aubree, or is it Lance. And so based on his comments and what he asked me, I said, yes, I had been on a medical leave, and he wanted to know kind of the nature of my medical condition, and so I felt like I had to tell him.

Further, plaintiff testified that Sitarama asked her questions about her medication.

Again, plaintiff's brief does not specifically argue that she suffered from harassment in violation of the ADA, but to the extent she does claim such harassment, plaintiff's evidence does not support such a claim. The Eighth Circuit has "repeatedly emphasized that anti-discrimination laws do not create a general civility code." *Ryan*, 679 F.3d at 779. " A hostile work environment must be both subjectively and objectively offensive, as well as 'extreme in nature and not merely rude or unpleasant.'" *Id.* (quoting *Sutherland v. Mo. Dep't of Corr.*, 580 F.3d 748, 751 (8th Cir.2009)). "In determining whether a plaintiff has demonstrated a hostile work environment, we consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the plaintiff's job performance." *Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 615 F.3d 977, 981 (8th Cir. 2010). Sitarama's alleged comments do not meet the standard set forth by the Eighth Circuit; moreover, plaintiff does not contend that they do. As a result, this claim also fails on summary judgment.

In sum, plaintiff has no direct evidence of discrimination based on her condition, and she has failed to show that Novo's non-discriminatory reason for terminating her was pretext.

Plaintiff has no evidence that Novo failed to accommodate for her condition, and, to the extent she claims hostile work environment, that claim also fails.

IV. **Conclusion**

Summary judgment shall be granted to defendants on all counts, and a separate order and judgment shall issue. Defendants' pending motions related to plaintiff's expert shall be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion to Exclude the Expert Report and Testimony of Dr. Allen Self (#42) is **DENIED as moot.**

**IT IS FURTHER ORDERED** that defendants' Motion to Strike the Untimely Fourth Report of Dr. Allen Self (#56) is **DENIED as moot.**

Dated this __24th__ day of April, 2013.

_____
UNITED STATES DISTRICT JUDGE